# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**JON DUKE DEPRIEST,**

      **Plaintiff,**

**vs.**                                                                 **Case No. 4:18cv107-WS/CAS**

**MARK S. INCH, CORIZON, LLC,**
**CENTURION OF FLORIDA, LLC,**
**DR. DANIEL CHERRY,**
**DR. PEREZ-LUGO,**
**DR. SCOTT KENNEDY,**
**DR. LAFONTANT,**
**DR. ERRON CAMPBELL,**
**and DR. CARL MAIER,**

      **Defendants.**

_____/


## <u>ORDER and REPORT AND RECOMMENDATION</u>

This case was initiated by the pro se Plaintiff in February 2018.  ECF

Nos. 1-3.  Thereafter, Plaintiff filed a motion requesting leave to amend his

complaint, ECF No. 8, which was granted, ECF No. 14, and Plaintiff filed

his amended complaint [hereinafter "complaint"] on March 9, 2018.  ECF

No. 9.  Service was directed in April 2018, ECF No. 14, and a number of

motions are now pending in this case.  These include Plaintiff's amended

motion for a preliminary injunction, ECF No. 10, a motion to stay this case in light of a related lawsuit (4:17cv214-MW-CAS) filed by the "Centurion Defendants," ECF No. 41, a motion to dismiss this case or, in the alternative, to stay this case or join in the related lawsuit filed by Secretary Julie Jones, ECF No. 53, a motion to dismiss filed by the "Corizon Defendants," ECF No. 61, Plaintiff's motion to locate missing Defendants, ECF No. 67, and a motion to dismiss this case as moot, ECF No. 70, filed by the Secretary.

At the time of case initiation, Julie Jones was Secretary of the Department of Corrections ["DOC"] and was sued in her official capacity only. ECF No. 9 at 1. Mark S. Inch, the current Secretary, is hereby substituted as a Defendant under Federal Rule of Civil Procedure 25(d).

**Allegations of the Complaint**

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. ECF No. 9. Corizon was under contract with the Department of Corrections to provide medical care for Florida prisoners between 2012 and 2016. *Id.* at 3. In 2016, Centurion was the contracted medical provider. *Id.* Plaintiff entered DOC custody in May 2011 and "was immediately diagnosed with having

the Hepatitis-C Virus ["HCV"]."[1]  *Id.* at 5.  After receiving his initial intake

physical examination, Plaintiff was not provided any treatment for HCV. He

alleges that Dr. LaFontant, the Regional Two Medical Director, denied that

treatment and that the DOC would not pay for it.  *Id.* at 5-6.

After arriving at Union Correctional Institution in 2012, he was again

told that he had HCV, but that DOC would not pay for HCV treatment.  *Id.*

at 6.  Furthermore, Plaintiff had surgery to repair a hernia, but had to

receive treatment to increase his platelet levels before surgery could be

scheduled.  *Id.*  He alleged that his spleen had been "damaged, possibly

from" HCV, and was not producing adequate platelets."  *Id.*[2]

In 2014, Plaintiff began to "show signs of advanced liver damage."

*Id.*  Dr. Perez-Lugo had Plaintiff transferred to the Northwest Florida

Regional Medical Center ["NFRMC"] to participate in a program run by

Dr. Kennedy and Dr. Maier.  *Id.*  Plaintiff states that goal of "The Kennedy

---

[1] HCV is a "viral infection" of the liver "which causes inflammation that in turn may result in scarring of the liver (fibrosis)."  Hoffer v. Jones, 290 F. Supp. 3d 1292, 1294 (N.D. Fla. 2017).  "Liver scarring can significantly impair liver function and damage its crucial role in filtering toxins from the blood, as well as making proteins involved in liver clotting and fighting infections.  Moreover, liver scarring places patients at risk of liver failure or liver cancer."  Hoffer, 290 F. Supp. 3d at 1294 (internal quotations omitted).

[2] An enlarged spleen may be indicative of cirrhosis.  Hoffer, 290 F. Supp. 3d at 1297.

12" was to treat "12 inmates with DAA's,"[3] a new medication, for approximately six months.  *Id.*  Plaintiff was repeatedly assured by both Dr. Kennedy and Dr. Maier that his treatment was "a total success" and the HCV was "totally non-detectable."  *Id.* at 7.  Plaintiff returned to Union C.I. in January 2015 and Dr. Perez-Lugo also advised that treatment was completely successful and the HCV was non-detectable.  *Id.*

Plaintiff was informed that he must wait at least six months after completing treatment with the DAA's before he could have surgery to repair his umbilical hernia.  *Id.* at 7.  In preparation for surgery, Plaintiff was informed that his platelet numbers were low and he was required to have a "series of platelet shots" before surgery could be authorized.  *Id.* at 7-8.  In late 2017, Plaintiff had the surgery at an outside hospital.  *Id.* at 8.  After a period of recovery at NFRMC, he was returned to Union C.I.  *Id.*  On or about December 2, 2017, Plaintiff was advised that he "was still infected with the HCV" and was now "classified as an F-4 on the METAVIR scale."[4]

---

[3] "DAAs" are "direct-acting antivirals" and have "proved to be 'a revolution' in medicine, but came with a hefty price tag."  <u>Hoffer</u>, 290 F. Supp. 3d at 1296.

[4] "The amount of liver scarring a patient has is usually measured on the METAVIR scale.  On this scale, a person can be classified F0 (no fibrosis), F1 (mild fibrosis), F2 (moderate fibrosis), F3 (severe 1295 fibrosis), or F4 (cirrhosis)."  <u>Hoffer</u>, 290 F. Supp. 3d at 1294-95 (internal citations to the record omitted).

At that time Plaintiff was advised that because he "was classified as an F-4 that [he] would be getting the treatment using the DAA's."  *Id.* at 9. However, in late January 2018, Dr. Perez-Lugo told Plaintiff he would not be approved for that treatment despite the F-4 classification.  *Id.*  Plaintiff contends that the "denial or refusal" to give him treatment "could have only come from Doctors Campbell or Cherry."  *Id.*

Plaintiff alleges that the "treatment he supposedly received in 2014-2015" was fabricated.[5]  *Id.* at 9-10.  Plaintiff contends Drs. Kennedy, Maier,

---

Once a person reaches F4 (cirrhosis), they are further classified based on whether they are suffering from HCV-related symptoms/complications. A patient with cirrhosis and no related complications is referred to as having compensated cirrhosis.  On the other hand, a patient with cirrhosis that is accompanied with complications is referred to as having decompensated cirrhosis.  The distinction between these two groups is important because their survival rates are markedly different.

290 F. Supp. 3d at 1296 (internal citations omitted).

[5] The related case of Hoffer v. Jones, 290 F. Supp. 3d 1292 (N.D. Fla. 2017), which is currently pending in this Court, substantiates Plaintiff's assertions.

Under FDC's contracts with Corizon and Wexford, there were two ways that doctors could obtain drugs.  Most drugs were listed on an FDC-approved list, referred to as the formulary. Those drugs were readily available to doctors and were paid for directly by FDC.  Drugs not listed on the formulary had to be specially requested.  Specially requested drugs were paid for by Corizon or Wexford.

When DAAs came out in late 2013, they were not included on the formulary.  Nevertheless, Dr. Scott Kennedy (who worked for Corizon at the time) decided to assemble twelve inmates (the "Kennedy 12") with the goal of treating them with DAAs.  By the end of 2014, the Kennedy 12 had

and Perez-Lugo "willfully and prejudicially" lied to him and deceived him

into believed his treatment was a success and he was cured.  *Id.* at 10.

"To compound [that] willful and deliberate act none of the Defendants

performed any follow-up after care" which Plaintiff had been promised.  *Id.*

Plaintiff alleges that the lack of follow-up care was "to keep him completely

'in the dark' about his condition . . . ."  *Id.*

Plaintiff claims that he has still not received treatment because it "is

very expensive and the decision of who gets treatment is made by the

administration."  *Id.* at 10.  He asserts that he is given conflicting

information[6] and informed that "his liver became cirrhosed between 2014 -

2017 because he was getting older."  ECF No. 9 at 10-11.  Dr. Perez-Lugo

also said that the decision about what treatment to provide was not "his

call" but would be made by the administration.  *Id.* at 11.  Plaintiff alleged

---

been assembled and thoroughly evaluated.  But the Kennedy 12 were
never given any DAAs because the necessary funds were not available.
This was so despite the fact that all twelve inmates showed signs of
advanced liver damage.

Hoffer, 290 F. Supp. 3d at 1297-98; *see also* Hoffer, case number 4:17cv214-MW/CAS,
ECF No. 100-2 at 34-35.

[6] Plaintiff alleged that he was told on January 23, 2018, by Dr. Perez-Lugo that his
viral load was "less than 25 or non-detectable despite the fact that Plaintiff went from a
F-2 to an F-4 on the METAVIR Scale from 2014 to 2017."  ECF No. 9 at 10-11.

that Dr. Perez-Lugo told Plaintiff that Dr. Cherry had denied Plaintiff the

"DAA treatment." *Id.*

Plaintiff contends that Defendants Corizon and Centurion would not

provide medically necessary treatment for inmates with HCV to save

money and increase profits. *Id.* at 11. Defendants Cherry and Campbell

are refusing Plaintiff treatment because of a lab report, but have "failed to

consider Plaintiff's condition as a whole with a failing damaged spleen and

a liver fully cirrrosed [sic]." *Id.* Further, he claims that Defendants

Kennedy, Maier, and Perez-Lugo fabricated "a treatment prognosis result"

and deceived him by telling him that his "HCV was totally non-detectable."

*Id.* Plaintiff seeks a declaratory judgment, a preliminary and permanent

injunction,[7] and monetary damages. *Id.* at 13-14.

**Exhaustion of Administrative Remedies**

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an

inmate exhaust 'such administrative remedies as are available' before

bringing suit to challenge prison conditions." 42 U.S.C. § 1997e(a) (quoted

in Ross v. Blake, 136 S. Ct. 1850, 1854-55, 195 L. Ed. 2d 117 (2016)).

---

[7] At the time Plaintiff's amended complaint was filed on March 9, 2018, a preliminary injunction had already been entered in November 2017 in a class action lawsuit brought in this Court concerning the lack of treatment for inmates in DOC custody with HCV. Hoffer v. Jones, 290 F. Supp. 3d 1292 (N.D. Fla. 2017).

The Supreme Court has held that "failure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). "[D]efendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008); *see also* Jones, 127 S.Ct. at 921 (concluding "that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). The issue of exhaustion is "treated as a matter in abatement."[8] Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) (cited in Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." Bryant, 530 F.3d at 1374 (cited in Turner, 541 F.3d at 1082).

The purpose of exhaustion is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of

---

[8] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376. Additionally, Turner v. Burnside "established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust." Whatley, 802 F.3d at 1209 (quoting Turner, 541 F.3d at 1082).

a federal case." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387,

165 L.Ed.2d 368 (2006) (quoted in <u>Whatley v. Warden, Ware State Prison</u>,

802 F.3d 1205, 1208 (11th Cir. 2015)).  In doing so, prisoners must

"properly exhaust" administrative remedies by complying with prison

grievance procedures.  <u>Jones</u>, 549 U.S. at 218, 127 S.Ct. at 922-23.

Ruling on a "motion to dismiss for failure to exhaust administrative

remedies is a two-step process."  <u>Turner</u>, 541 F.3d at 1082 (citation

omitted).  "First, the court looks to the factual allegations in the defendant's

motion to dismiss and those in the plaintiff's response, and if they conflict,

takes the plaintiff's version of the facts as true."  *Id.*  If the prisoner's facts

show a failure to exhaust, the motion to dismiss must be granted.  *Id.*

(citing to <u>Bryant</u>, 530 F.3d at 1373-74).  Second, if dismissal is not

warranted based on the prisoner's factual allegations, the court must "make

specific findings to resolve disputes of fact, and should dismiss if, based on

those findings, defendants have shown a failure to exhaust."  *Id.* at

1082-83; see also <u>Whatley</u>, 802 F.3d at 1209.  The burden of proof for

evaluating an exhaustion defense rests with the defendant.  <u>Jones v. Bock</u>,

549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude

that failure to exhaust is an affirmative defense under the PLRA, and that

inmates are not required to specially plead or demonstrate exhaustion in their complaints."); <u>Turner</u>, 541 F.3d at 1082-83.

The Secretary's motion to dismiss argues that Plaintiff's complaint should be dismissed for failing to exhaust administrative remedies as required by 42 U.S.C. § 1997e(e).  ECF No. 53 at 10-15.  Although Plaintiff filed a formal grievance on January 13, 2018, the Secretary says that he did not properly file a grievance appeal.  *Id.* at 15.

Plaintiff submitted only one appeal on February 7, 2018.  *Id.*  The grievance appeal was rejected for not being in compliance with the grievance rules.  *Id.*  Plaintiff was informed that he could resubmit his grievance appeal within 15 days, but he did not do so.  *Id.*  The Secretary provided a declaration of Ashley Stokes which states that Plaintiff "did not resubmit his grievance appeal . . . he did not exhaust his administrative remedies through the prison grievance system."  ECF No. 53-2 at 1.

In response to that motion, Plaintiff does not dispute that he did not resubmit a grievance appeal.  Plaintiff points out, however, that he filed an informal grievance, followed by a formal grievance on January 13, 2018.  ECF No. 62 at 2.  Plaintiff contends that the Department had 20 days in which to respond to his grievance, and he asserts that time expired on

February 1, 2018.[9]  *Id.*  Plaintiff says that he allowed an additional five days to pass before proceeding to the next step of the grievance procedure.  *Id.*

On February 7, 2018, Plaintiff submitted a grievance appeal to the Secretary's Office.  *Id.*  The opening statement of his appeal advised that he had "waited the 20 days allowed for the institution's response" and was proceeding to the next step in the process because he had not received a timely response to his formal grievance.  *Id.* at 2-3; ECF No. 62 at 21 (Ex. G).

On the following evening, February 8, 2018, during mail call, Plaintiff received the response denying his formal grievance.  *Id.* at 3.  The response was dated February 5, 2018, and a stamp on the document indicates it was mailed on February 6, 2018.  *Id.* at 23 (Ex. G).  The next morning, Plaintiff forwarded a copy of that response to the Bureau of Inmate Grievances/Appeals.  *Id.* at 3; *see* ECF No. 62 at 19.  Plaintiff requested that the response be considered along with his appeal.  *Id.*

On February 13, 2018, a "notice" was issued to Plaintiff by the Secretary's representative.  ECF No. 62 at 3, 25.  The notice is in the form of a memorandum and is titled "correspondence."  *Id.* at 25 (Ex. H).  It

---

[9] That is not correct; 20 days from January 13, 2018, is February 2, 2018.

Case No. 4:18cv107-WS/CAS

advised Plaintiff that "[w]hen (re)submitting an appeal, you must write that appeal on a new/unused DC1-303 form, attach all pertinent forms and continuation sheets to include the formal grievance and file within the appropriate time frame." *Id.*  Thereafter, on February 15, 2018, the Secretary's representative[10] responded to his grievance appeal.  ECF No. 62 at 27.  The response stated that Plaintiff's appeal was not "filed in compliance with" the grievance procedures because he "did not provide . . . a copy of the formal grievance filed at the institutional level as required . . . ." *Id.*  The response stated that the "automated log" revealed that his formal grievance was denied on February 5, 2018, which was noted to be "timely" and mailed to Plaintiff.  *Id.*  The response provided that upon receipt of the response, Plaintiff was "allowed an additional 15 days" to resubmit his appeal.  Thus, Plaintiff's appeal was "returned without action." *Id.*  Plaintiff advises that he received that response on February 25, 2018, and the "date stamp" on the appeal response shows it was mailed on February 21, 2018.  ECF No. 62 at 3; *see* ECF No. 62 at 27 (Ex. I).

---

[10] That document is signed by the same person, W. Millette, who signed the "notice."

Case No. 4:18cv107-WS/CAS

**1.     Compliance with the grievance rules**

Prisoners are required to exhaust administrative remedies and to do so properly.  <u>Jones</u>, 549 U.S. at 217, 127 S. Ct. at 922 (citing <u>Woodford</u>). The Supreme Court has made clear that "to properly exhaust administrative remedies," prisoners must comply with the applicable procedural rules of the DOC's grievance procedures.  <u>Woodford</u>, 548 U.S. at 93-95, 126 S. Ct. at 2387-89; <u>Jones</u>, 549 U.S. at 218, 127 S. Ct. at 922-23.  Plaintiff cannot be considered to have "properly" exhausted because he did not comply with the requirement that he submit a copy of his formal grievance with his appeal.  Rule 33-103.007(5)(a) provides that when an inmate submits a grievance appeal to the Secretary's Office, the inmate must "[a]ttach a copy of his formal grievance and response" to his appeal. FLA. ADMIN. CODE R. 33-103.007(5)(a).  Rule 33-103.007(4)(d) provides that "[a] grievance appeal or direct grievance may be returned to the inmate for any one or more of the reasons stated in Rule 33-103.014, F.A.C., without further processing."  One of those reasons is that a grievance appeal "did not have the attachments required: . . .  the formal grievance and response . . . ."  FLA. ADMIN. CODE R. 33-103.014(1)(g). Because Plaintiff admittedly did not submit a copy of his formal grievance

with his appeal, he did not comply with the Department's Rules and did not properly exhaust administrative remedies.

Nevertheless, Plaintiff argues that he could not properly submit all attachments with his appeal because he had not yet received a response to his formal grievance.  ECF No. 62 at 2-4.  Plaintiff states that "pursuant to department policy, practice and procedure an inmate is not permitted to copy a grievance or appeal when filing."  ECF No. 62 at 4.  He said that "[a] copy and the original are provided by the respondents, only after their response."  *Id.*[11]

The rule specifies that "[t]he original grievance and one copy shall be returned to the inmate" and the "date the grievance is returned to the inmate . . . shall be noted on the form."  FLA. ADMIN. CODE R. 33-103.006(6)(a).  Thus, the rule supports Plaintiff's assertion that he did not have a copy of his response.  However, as will be explained below, Plaintiff's inability to submit the copy of his grievance was due to Plaintiff's not having properly calculated the time in which a response was due.

---

[11] Additionally, this is an issue that should have been presented to prison officials during the grievance process.  Had Plaintiff resubmitted his grievance appeal, he could have explained his situation and it is possible that his appeal could have been decided on the merits.  However, Plaintiff did not do so.

## 2.   Untimely

Plaintiff has also argued that the rules permit him to proceed to the next step of the grievance process if the respondent fails to respond within the authorized time frame.  ECF No. 62 at 2.  He contends that a timely response was not provided to his formal grievance and that he advised the Secretary's Office of that fact.  *Id.*  Plaintiff states that he even submitted a copy of the receipt for his formal grievance with his appeal to prove that it was "in the system."  *Id.*  Plaintiff disputes the Department's determination that the institutional response was timely.  *Id.* at 3.  He argues that he "should not be held accountable for the Central Office's inability to properly investigate an issue on appeal and respond in a timely manner consistent with the rules governing inmates grievances and appeals pursuant to Chapter 33-103."  *Id.*

Ignoring the conclusion that Plaintiff did not properly exhaust administrative remedies because he did not submit a copy of his formal grievance with his appeal, Plaintiff's argument has been considered that the formal grievance was not denied within the proper time frame and he was entitled to proceed to the next step in the grievance process.  The Rules direct inmates to submit formal grievances by placing them in a

locked grievance box.  FLA. ADMIN. CODE R. 33-103.006(2)(h).  A grievance

coordinator logs all formal grievances and provides a receipt[12] to the

inmate.  *Id.*; *see also* FLA. ADMIN. CODE R. 33-103.006(5)(b).  After

completing an investigation, a response to the formal grievance must "be

provided to the inmate within 20 calendar days of *receipt* of the grievance

as required by paragraph 33-103.011(3)(b), F.A.C."  FLA. ADMIN. CODE R.

33-103.006(6) (emphasis added).  Additionally, unless an inmate agrees in

writing to an extension of time,[13] "expiration of a time limit at any step in the

process shall entitle the complainant [inmate] to proceed to the next step of

the grievance process."  FLA. ADMIN. CODE R. 33-103.011(4).  In such a

case, the inmate "must clearly indicate this fact when filing at the next

step."  *Id.*  "If the inmate does not agree to an extension of time at the

central office level of review, he shall be entitled to proceed with judicial

remedies as he would have exhausted his administrative remedies."  *Id.*

Plaintiff's formal grievance was written on January 13, 2018, but the

date of receipt was not until January 17, 2018.  ECF No. 62 at 11, 22.  A

response must be provided "within 20 calendar days of *receipt* of the

---

[12] Plaintiff had such a receipt and provided it with his grievance appeal.

[13] Plaintiff expressly rejected an extension of time.  *See* ECF No. 62 at 20.

Case No. 4:18cv107-WS/CAS

grievance." That date is February 6, 2018. The response was written on February 5, 2018, and mailed on February 6, 2018.[14] The response to Plaintiff's formal grievance was timely and Plaintiff's argument on this point is incorrect.

More problematic, however, is that Plaintiff's appeal to the Secretary was written and dated by Plaintiff on February 7, 2018. ECF No. 62 at 21. The "receipt date" for submitting his appeal was February 9, 2018, the date it was forwarded to Central Office.[15] *Id.*

The Rules give the Secretary "30 calendar dates from the date of the receipt" to respond to a grievance appeal. Plaintiff's appeal was denied on February 15, 2018, although it was not mailed to him until February 21, 2018. ECF No. 62 at 27. Plaintiff acknowledges that he received the response "through institutional mail [on] February 25, 2018." ECF No. 62 at 3. The rejection of his appeal was timely, made within 30 days, and he received it within that period of time as well.

---

[14] Because a grievance concerning a medical issue is responded to by an official within the medical department, in this case "E. Perez, CHO," as well as the warden's office, it required mailing to Plaintiff. ECF No. 62 at 17.

[15] The appeal was actually "received" in Central Office on February 12, 2018, ECF No. 62 at 21, although that is immaterial.

Case No. 4:18cv107-WS/CAS

Plaintiff's complaint was stamped "filed" in this Court on February 21, 2018.  *See* ECF No. 1 at 1.  However, pursuant to the prison "mailbox rule,"[16] the date of filing is more properly deemed to be the date Plaintiff gave his complaint to prison staff for mailing.  Plaintiff certified that date to be January 29, 2018.  ECF No. 1 at 15.  Additionally, a stamp on the envelope in which the complaint was mailed to this Court also confirms the date of January 29, 2018, as the date Plaintiff gave it to prison staff.  ECF No. 1 at 18.  That date is before the deadline provided for the return of his formal grievance and well before Plaintiff wrote his appeal.  Thus, Plaintiff's complaint in this Court was prematurely filed.[17]

Even if Plaintiff's complaint were deemed to have been timely filed in February 2018, it would be of no benefit to Plaintiff because he did not

---

[16] Pro se prisoners must entrust the forwarding of legal mail to prison authorities.  A prisoner gives his mail to a prison official and has no ability to control when it is actually mailed from the prison or received by the Court.  The only information a prisoner can provide is the "date he delivered the [mail] to those prison authorities and the date ultimately stamped on" his legal mail.  Houston v. Lack, 487 U.S. 266, 271-272, 108 S. Ct. 2379, 2382-2383, 101 L. Ed. 2d 245 (1988).  Therefore, a pro se prisoner's complaint is considered "filed" on the date the prisoner gives the mail to prison authorities for mailing.  Houston, 487 U.S. at 275, 108 S. Ct. at 2379; Garvey v. Vaughn, 993 F.2d 776, 783 (11th Cir.1993); Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999).

[17] Notably, Plaintiff's initial complaint incorrectly argued that exhaustion was not required prior to filing suit.  ECF No. 1 at 13.

properly exhaust administrative remedies.  His grievance appeal was rejected for failing to comply with the Rules.  The Secretary's motion to dismiss for failure to exhaust administrative remedies, ECF No. 53, should be granted.  In granting that aspect of the Secretary's motion, all other motions should be denied as moot.

One additional point is worth noting.  Plaintiff is complaining in this case about the lack of medical care for HCV.  In a related case currently pending in this Court, a preliminary injunction has already been issued by Chief United States District Judge Mark E. Walker in Hoffer v. Jones, 290 F. Supp. 3d 1292 (N.D. Fla. 2017) (noting the DOC's "long and sordid history of failing to treat HCV-infected inmates" and entering an injunction to screen, evaluate, and provide treatment).  Dismissal does not mean that Plaintiff's medical needs will not be addressed and his Eighth Amendment claim is rejected.  To the contrary, Plaintiff will receive injunctive relief through Hoffer.

## O R D E R

Accordingly, it is **ORDERED** that Mark S. Inch, the current Secretary of the Florida Department of Corrections, is automatically substituted as Defendant pursuant to Rule 25(d) in place of former Secretary Julie Jones.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the motion to dismiss Plaintiff's amended complaint, ECF No. 53, filed by the Secretary be **GRANTED** and this case **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e), and that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  It is further **RECOMMENDED** that all other pending motions, ECF Nos. 10, 41, 61, 67, and 70, be **DENIED as moot**.

**IN CHAMBERS** at Tallahassee, Florida, on February 26, 2019.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ.**

**P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**